# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA FOUGHT, et al.,

|  |  |
|---|---|
| Plaintiffs, | CIVIL ACTION NO. 3:17-CV-01825 |
| v. | (MEHALCHICK, J.) |
| CITY OF WILKES-BARRE, PENNSYLVANIA, et al., | |
| Defendant. | |

## MEMORANDUM

Before the Court are two motions for summary judgment filed by Defendant Joseph Homza ("Officer Homza") (Doc. 104) and Defendant City of Wilkes-Barre, Pennsylvania ("Wilkes Barre") and Defendant Marcella Lendacky ("Chief Lendacky") (collectively, "City Defendants") (Doc. 108) challenging Plaintiffs Joshua Fought ("Fought"), Anthony Falcone ("Officer Falcone"), and Kaitlyn Falcone's (collectively, "Plaintiffs") second amended complaint. (Doc. 36). The Court heard oral argument on the pending motions on April 1, 2024. (Doc. 104; Doc. 108). For the reasons provided herein, Officer Homza's motion for summary judgment will be **DENIED in part** and **GRANTED in part** and City Defendants' motion for summary judgment will be **GRANTED**. (Doc. 104; Doc. 108).

## I.    BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the parties' statements of material facts and responses thereto.[1] (Doc. 106; Doc. 109; Doc. 112-1; Doc. 112-3; Doc. 118). This case arises

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice.

from two separate incidents during which police K-9 Chase bit each Plaintiff. The first incident involves Fought and occurred on July 18, 2017, in the Wilkes Barre Public Square.[2] (Doc. 106, ¶ 10; Doc. 105-2, at 8). At approximately 4:35 PM, Officer Homza noticed a group of people unlawfully consuming alcohol and smoking cigarettes on the Square.[3] (Doc. 106, ¶ 21; Doc. 105-7, at 4-5). Officer Homza and his K-9 partner, Chase, approached the group and requested identification. (Doc. 106, ¶ 25; Doc. 105-5, at 44; Doc. 105-7, at 6). When asked if he had any outstanding warrants, Fought responded that he would not be standing there if he did. (106, ¶ 26; Doc. 105-2, at 11; Doc. 105-7, at 6). This remark raised Officer Homza's suspicion that Fought may flee. (Doc. 106, ¶ 27; Doc. 105-7, at 6). Another member of the group, Patricia Slusser, approached Officer Homza and his canine partner, causing the K-9 Chase to react by barking. (Doc. 105-2, at 14-15; Doc. 105-7, at 7; Doc. 106, ¶ 28). Fought

---

In addition, the facts have been taken in the light most favorable to the non-moving party with respect to each motion.

[2] The Court notes that the way Plaintiffs have cited to the record in their statement of facts (and lack of citations in their briefing) has made analyzing the instant motions difficult. (Doc. 112-3). The citations used throughout Plaintiffs' statements of fact are not clearly correlated to entries on the docket, and the exhibits are not properly labeled. Plaintiffs even seem to have forgotten to add some of the citations, including lines such as "Cite expert report that training was deficient." (Doc. 112-1, ¶ 4). Further, the naming provisions used by Plaintiffs for documents make it unclear to the Court to which motion they relate to, Officer Homza's or the City Defendants'. (Doc. 112-1). For example, "Plaintiff's Response In Opposition To Defendants' Statement Of Material Facts." (Doc. 112-1). Based on the Court's review of the docket, there are also exhibits missing, including the Deposition Transcript for Marcela Lendacky, allegedly Plaintiff's Exhibit A. (Doc. 112-4). While the Court will do its best to analyze the record before it as to ensure the parties are justly heard, the Court will not go above and beyond to interpret unclear documents and missing exhibits, and thus arguments based thereon may be forfeited. Plaintiffs' materials were not filed on the docket in accordance with the Local Rules. Plaintiffs are advised to take care to abide by the Local Rules when filing future papers in this Court.

[3] Without citing to the record, Plaintiffs dispute the fact that Fought was gathered with others drinking while on Public Square. (Doc. 112-1, ¶ 17).

responded to this reaction by yelling at Officer Homza "[d]on't let that dog lunge at my girl like that," escalating the interaction. (Doc. 106, ¶ 29; Doc. 105-2, at 14-15; Doc. 105-7, at 6-7; Doc. 112-8, at 41). Officer Homza attempted to de-escalate the situation by removing Fought. (Doc. 106, ¶ 30; Doc. 105-7, at 7). When this failed, Officer Homza attempted to place Fought under arrest for disorderly conduct and public drunkenness, however, Fought would not comply with his demands. (Doc. 106, ¶ 31; Doc. 105-5, at 47; Doc. 105-7, at 7). As Fought struggled against Officer Homza while he attempted to place Fought in handcuffs, K-9 Chase, without being commanded but allegedly consistent with his training as it relates to an arrestee resisting arrest or attempting to flee, bit Fought on the lower right side of his back, above his hip. (Doc. 106, ¶ 38; Doc. 105-7, at 8, Doc. 105-7, at 29; Doc. 105-5, at 18, 43). Video footage shows K-9 Chase engaging with Fought for an extended amount of time, as on-lookers watched. (6-29-21 -Exhibit H -7-18-2017 Video of Arrest). Eventually, Officer Homa commanded K-9 Case to let go and Fought was released. (Doc. 106, ¶ 44). As a result of these events, Fought was hospitalized and needed multiple surgeries. (Doc. 106, ¶ 46; Doc. 112-8, at 127-29). Fought was also charged with disorderly conduct, public drunkenness, and resisting arrest (Doc. 106, ¶ 48; Doc. 105-7). Fought has little to no recollection of this incident. (Doc. 112-8, at 30, 35, 38- 40, 58, 62).

The second incident involves Officer Falcone and occurred on December 17, 2017. (Doc. 106, ¶ 50; Doc. 112-3, at 4). During this time, Officer Falcone was working as a Wilkes-Barre police officer and was involved in an attempt to locate a suspect at large. (Doc. 106, ¶ 51; Doc. 105-4, at 14; Doc. 112-3, ¶ 28). Officer Falcone was assigned to search and monitor the "outside perimeter" as other members of the department searched for the suspect. (Doc. 106, ¶ 52; Doc. 105-4, at 14). The suspect was located hiding under a vehicle. (Doc. 106, ¶ 54;

3

Doc. 105-5, at 32). In an attempt to apprehend him, Officer Homza commanded K-9 Chase to engage the suspect. (Doc. 106, ¶ 53; Doc. 105-5, at 32; Doc. 112-3, ¶ 31). Around this time, Officer Falcone approached the other side of the vehicle to assist. (Doc. 106, ¶ 56; Doc. 105-6, at 16; Doc. 112-3, ¶ 31). Officer Falcone was subsequently engaged by K-9 Chase on the right leg. (Doc. 106, ¶ 57; Doc. 105-4, at 16; Doc. 105-5, at 36; Doc. 105-6, at 11). Officer Homza immediately commanded K-9 Chase to release Officer Falcone. (Doc. 106, ¶ 58; Doc. 105-5, at 36). K-9 Chase complied with the command. (Doc. 106, ¶ 59; Doc. 105-5, at 36). As a result of the bite, Office Falcone suffered injuries to his leg. (Doc. 112-3, ¶ 32). Officer Falcone received "Heart and Lung Benefits" as a result of this incident. (Doc. 106, ¶ 60; Doc. 105-4, at 4).

Plaintiffs filed the operative second amended complaint on October 23, 2018. (Doc. 36). Therein, Plaintiffs assert fourteen Claims: Count I: Fourth Amendment seizure against Officer Homza; Count II: Failure to Properly Train and Supervise against Wilkes Barre; Counts III and IV: Assault and Battery against Officer Homza; Count V: Intentional Infliction of Emotional Distress ("IIED") against Officer Homza; Counts VI and VII: abuse of process and malicious prosecution against Officer Homza; Count VIII: Negligence against Officer Homza and Chief Lendacky; Count IX: Loss of consortium; Count X: 42 U.S.C. § 1983 state-created danger; Count XI: 42 U.S.C. § 1983 custom and policy against City Defendants and Officer Homza; Count XII: Negligent Hiring against City Defendants; Count XIII: Negligent Hiring against City Defendants; Count XIV: Negligent Retention against Wilkes Barre and Chief Lendacky. (Doc. 36).

On June 29, 2021, Officer Homza filed a motion for summary judgment, as well as a statement of facts and corresponding exhibits, and a brief in support. (Doc. 104; Doc. 105;

4

Doc. 106; Doc. 107). On June 29, 2021, City Defendants filed a motion for summary judgment, statement of facts, appendix, and brief in support. (Doc. 108; Doc. 109; Doc. 110; Doc. 111). On July 20, 2021, Fought filed a brief in opposition to Defendants' motions for summary judgment with corresponding memorandum, supplements, and exhibits.[4] (Doc. 112-1; Doc. 112-2; Doc. 112-3; Doc. 112-4; Doc. 112-5; Doc. 112-6; Doc. 112-7; Doc. 112-8; Doc. 112-9; Doc. 112-10; Doc. 112-11; Doc. 112-12; Doc. 112-13; Doc. 112-14; Doc. 112-15; Doc. 112-16; Doc. 112-17; Doc. 112-18). On July 29, 2021, Officer Homza filed a reply brief. (Doc. 115). On August 3, 2021, City Defendants filed a reply brief. (Doc. 117). The motions are now ripe and ready for disposition. (Doc. 104; Doc. 105; Doc. 106; Doc. 107; Doc. 108; Doc. 109; Doc. 110; Doc. 111; Doc. 112; Doc. 115; Doc. 117). On February 12, 2024, this matter was reassigned to the undersigned District Judge.

## II.   MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the

---

[4] As noted *supra*, Plaintiffs filed a counter-statement of undisputed facts. (Doc. 112-3, at 1-4). On August 3, 2021, Officer Homza filed a response to Plaintiffs' statement of undisputed facts. (Doc. 118; Doc. 119).

nonmovant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts that give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

## III.   DISCUSSION

Two motions for summary judgment are currently before the Court, each requesting summary judgment on different basis.[5] (Doc. 104; Doc. 108). Officer Homza avers he is entitled to summary judgment on Plaintiffs' Fourth Amendment, assault, battery, intentional infliction of emotional distress, and negligence claims and on qualified immunity grounds. (Doc. 107, at 2). City Defendants seek summary judgment on Plaintiffs' failure to train and supervise claims, state-created danger claims, and Officer Falcone's negligent hiring claim, as well as on qualified immunity grounds. (Doc. 111, at 2). The Court will address each motion in turn.

### A.   OFFICER HOMZA'S MOTION FOR SUMMARY JUDGMENT

#### 1.   Fought's Fourth Amendment Unlawful Search and Seizure Claims

In Count I of the second amended complaint, Fought asserts an excessive use of force claim against Officer Homza. (Doc. 36, ¶¶ 163-77). Officer Homza argues he is entitled to summary judgment on Fought's Fourth Amendment claim because no reasonable juror could conclude that K-9 Chase's uncommanded engagement with Fought constitutes a use of excessive force under the circumstances of Fought's arrest. (Doc. 107, at 23). Fought responds

---

[5] Fought does not oppose the dismissal of his malicious prosecution and abuse of process claims. (Doc. 112-17, at 8). Accordingly, Counts VI and VII of the second amended complaint will be **DISMISSED.** (Doc. 26, ¶¶ 207-14, 215-22). Plaintiffs also do not oppose the dismissal of their negligence, loss of consortium, and negligent retention claims against City Defendants. (Doc. 112-16, at 10). Accordingly, Counts VIII, IX, and XIII as to City Defendants will be **DISMISSED.** (Doc. 36, ¶¶ 223-27, 228-31, 275-86).

that the record contains a genuine issue of material fact as to whether Officer Homza used excessive force in effectuating his arrest. (Doc. 112-17, at 11-13).

When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Police violate the Fourth Amendment if their use of force "is excessive under objective standards of reasonableness." *Green v. New Jersey State Police*, 246 F. App'x 158, 161 (3d Cir. 2007) (citation omitted). When determining whether a police officer's use of force was reasonable, Courts consider the perspective of a reasonable officer, keeping in mind that circumstances are often "tense, uncertain, and rapidly evolving." *Green*, 246 F. App'x at 161. "How much force is reasonable in effectuating an arrest is based on the 'totality of the circumstances[.]'" *Geist v. Ammary*, 40 F. Supp. 3d 467, 476 (E.D. Pa. 2014). "While this inquiry is highly individualized and fact specific, the Supreme Court has provided three factors to guide us through it: (1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Graham*, 490 U.S. at 396). These factors are known as the *Graham* factors. Additional considerations are as follows:

> 1) the severity of the crime at issue, 2) the immediate threat to the safety of the officers or others that the suspect poses, 3) whether the suspect is resisting or evading arrest, 4) how "violent or dangerous" the suspect is, 5) the "duration" of the force, 6) whether the force was used in making an arrest, and 7) whether the suspect might be armed, and 8) the number of people with whom the police must contend.

> *Geist*, 40 F. Supp. 3d at 476 (citing *Graham*, 490 U.S. at 396).

Considering this totality of the circumstances approach, the Court's reasonableness inquiry is to be "highly individualized and fact specific," and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Santini*, 795 F.3d at 417; *Graham*, 490 U.S. at 396. Whether the use of force was reasonable is typically a question for the jury. *Jefferson v. Lias*, 21 F.4th 74, 79 (3d Cir. 2021); *see also Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) ("Since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus by a jury decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared.")

In this case, part of the alleged use of force involved a K-9 partner. (Doc. 36, ¶ 171). As this Court has previously stated, "a police dog can inflict severe harm" and the use of a police dog on a suspect constitutes serious use of force. *Fought v. City of Wilkes-Barre, Pennsylvania*, 466 F. Supp. 3d 477, 499 (M.D. Pa. 2020). The Third Circuit has held, however, that the "[u]se of a police dog to bite and hold a suspect is not *per se* unreasonable." *Moore v. Vangelo*, 222 F. App'x 167, 170 (3d Cir. 2007) (citing *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994)). In this Circuit, K-9 bites are typically not found to constitute an excessive use of force in instances where the K-9 took action without being commanded. *See Foskey v. Little*, 2011 WL 3438415, at *5 (D. Del. 2011) (officer did not use excessive force where the K-9 took action without command)*; see also Neeley v. Samis,* 183 F. Supp. 2d 672, 681 (D. Del. 2002) (finding officers did not use excessive force where the K-9 responded to the plaintiff's struggling by biting without being commanded).

There remain questions of material fact as to whether excessive force was used to effectuate Fought's arrest. Fought alleges that Officer Homza used excessive force by restraining Fought using an arm bar, taking Fought to the ground using force while Fought was handcuffed, holding Fought down as K-9 Chase bit him, "allowing his K-9 to jump up and down and thrash its head back and forth while biting Fought," and refusing to issue a command to K-9 Chase to release Fought. (Doc. 36, ¶ 171). The record is inconclusive as to whether such force was lawful under the circumstances and whether a reasonable juror could conclude the evidence supports these allegations. In making this determination, the Court looks to the *Graham* factors and the totality of the circumstances. *Geist*, 40 F. Supp. 3d at 476. First, Fought was not suspected of committing any severe or violent crime, as he was arrested for disorderly conduct. (Doc. 106, ¶ 31; Doc. 105-5, at 47; Doc. 105-7, at 7); *see Groman v. Township of Manalapon*, 47 F.3d 628, 634 (3d Cir. 1995) (concluding that the "crime[ ] of disorderly conduct" is not "particularly severe"). Moreover, "even if an individual is engaged in disorderly conduct, there still could be a level of responsive force that is ... 'excessive and unreasonable.'" *El v. City of Pittsburgh*, 975 F.3d 327, 339 (3d Cir. 2020) (citation omitted). Second, the record is inconclusive as to whether Fought posed an immediate threat to those around him, particularly Officer Homza. While the record supports that Fought had been drinking before his arrest, there is no evidence that Fought had a gun or was making violent threats. (Doc. 105-2, at 9; Doc. 106, ¶ 18). Third, the record is inconclusive as to whether Fought resisted arrest. There is some evidence in the record, including transcripts from Fought's trial in Luzerne County Court of Common Pleas and deposition testimony, that suggests he was resisting arrest. (Doc. 105-5, at 47Doc. 105-7, at 8). There is also video footage of the arrest that commences when Fought is already on the ground which shows Fought

10

struggling against K-9 Chase for a substantial amount of time. (Doc. 106, ¶¶ 37, 38; Doc. 112-1, ¶¶ 37, 38; 6-29-21 -Exhibit H -7-18-2017 Video of Arrest). It is unclear whether Fought was struggling against being arrested or against K-9 Chase's engagement, and reasonable jurors could disagree as to whether the duration of force used by Officer Homza was reasonable. (6-29-21 -Exhibit H -7-18-2017 Video of Arrest).  Even if he were demonstrating some non-compliance with Officer Homza's orders, a reasonable juror could conclude that Fought's noncompliance was not indicative of Fought posing an immediate threat to anyone's safety, especially in light of the undisputed fact that Fought was not suspected of any violent crimes. (Doc. 112-8, at 54); *see Santini*, 795 F.3d at 420 (finding the third *Graham* factor inconclusive where the plaintiff admitted to resisting arrest but did so nonviolently). Moreover, reasonable minds could disagree as to whether Fought's remark that he "wouldn't still be standing there" if he had an active arrest warrant would raise a reasonable suspicion in Officer Homza's mind that Fought might flee. (Doc. 105-2, at 11; Doc. 105-7, at 6). All this considered, the Court cannot find in favor of Officer Homza at this time.

To the extent Fought premises his excessive force claim on K-9 Chase's uncommanded bite, Officer Homza cites District of Delaware case *Neeley v. Samis* to argue "officers should not be held to have used excessive force for uncommanded bites by police K-9s." (Doc. 107, at 27-28); 183 F. Supp. 2d 672, 680 (D. Del. 2002). *Neely* is distinguishable from the case at bar because in *Neely* the Court found "[u]ndisputed evidence on the record supports the officers' belief that plaintiff had already committed serious crimes, that plaintiff posed an immediate threat to the safety of the officers and the public, and that plaintiff was actively evading arrest by flight." 183 F. Supp. 2d at 679. Here, the record supports that Fought had not committed any serious crimes, and there remain questions of material fact as

to whether he was dangerous or in flight. Courts beyond this Circuit have determined that use of a police dog on a suspect who is neither dangerous nor fleeing may constitute a use of excessive use of force. *See e.g.*, *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000) (holding ordering a police dog to apprehend, for a period of two minutes, a compliant, non-threatening, burglary suspect, who was on the ground and neither resisting arrest nor attempting to flee, was a Fourth Amendment excessive force violation); *see also e.g., Mullins v. City of Colorado Springs*, 575 F. Supp. 3d 1360 (D. Colo. 2021) (finding the use of a police dog engaging with a suspect that is not dangerous or fleeing to be a use of excessive force). This rings especially true in this case, where video footage shows K-9 Chase engaging with Fought for a significant amount of time, and the record supports Fought sustained serious injuries as a result. (6-29-21 -Exhibit H -7-18-2017 Video of Arrest).

Because reasonable minds could differ as to whether Officer Homza used excessive force in arresting Fought, summary judgment is inappropriate as to Fought's Fourth Amendment claims. Accordingly, summary judgment is **DENIED** at to Count I of the second amended complaint. (Doc. 36, ¶¶ 163-77; Doc. 104).

## 2. Officer Homza's Qualified Immunity Claim

Officer Homza argues that "[r]egardless of whether a jury were to find a Fourth Amendment excessive force violation, Officer Homza would be entitled to qualified immunity." (Doc. 107, at 29). Officer Homza continues, "[s]pecifically, Officer Homza is entitled to qualified immunity because an uncommanded police K-9 bite does not violate clearly established law." (Doc. 107, at 29). Fought responds that "Defendant Homza's actions in violating Plaintiff Fought's constitutional right to be free from unlawful searches and seizures are not protected by Qualified Immunity." (Doc. 112-17, at 10).

12

Qualified Immunity is not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010). At the time of the violation, there must be a clear legal principle that "prohibit[s] the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and citation omitted). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Here, the parties dispute whether Officer Homza's conduct violated a clearly established right. (Doc. 107, at 30; Doc. 112-2, at 11). "A right is [clearly] established if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 585 (M.D. Pa. 2013). A right may be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. 731, 741 (2011). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669

13

F.3d 144, 159 (3d Cir. 2012); *see also al–Kidd*, 563 U.S. at 742 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). Because the line between acceptable force and excessive force can be difficult to discern, an officer is entitled to qualified immunity absent existing precedent which "'squarely governs' the specific facts at issue" and adequately notifies the officer that a specific use of force is unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 15 (2015)). The case law does not have to be "directly on point," but existing precedent must have placed the question of unlawfulness "beyond debate." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 196 (3d Cir. 2021) (quoting *al-Kidd*, 563 U.S. at 741).

Because there are still questions of material fact surrounding whether Officer Homza violated Fought's Fourth Amendment rights, Officer Homza is not entitled to qualified immunity at this time. *See Giles v. Kearney*, 571 F.3d 318, 327-28 (3d Cir. 2009) (finding correctional officers were not entitled to qualified immunity where "a dispute of material fact" existed regarding the alleged excessive force because "the critical event was controverted"). The right to be free from excessive force while being arrested, specifically while being handcuffed, was clearly established at the time of Fought's arrest. *See Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) ("Therefore, we hold that the right of an arrestee to be free from the use of excessive force in the course of his handcuffing clearly was established when Officer [] acted in this case, and that a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth Amendment."). As discussed

14

*supra*, the record is inconclusive as to whether Officer Homza used excessive force when effectuating Fought's arrest and thus violated his constitutional rights. "In light of a clearly established right, district courts tend to deny qualified immunity when the reasonableness of the force used is factually disputed." *Guthrie v. Guthrie*, 216 F. Supp. 3d 590, 596 (W.D. Pa. 2016); *see also Dimoff v. Amarose*, No. 1:22-CV-00072, 2024 WL 3330566, at *12 (M.D. Pa. July 8, 2024) (in the context of an excessive force claim and considering genuine disputes of material fact, stating "the Court finds that this is not the appropriate time in the proceedings to resolve the issue of qualified immunity, especially because of the broad protection qualified immunity affords a government official."). Furthermore, several courts beyond this Circuit have specifically recognized that once an arrestee stops resisting or attempting to flee, and ceases to pose a safety threat, using a police dog to apprehend the arrestee constitutes objectively unreasonable excessive force.[6] *See e.g., Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (finding that it was clearly established, at the time of the officer's conduct, that "subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable."); *see also e.g., Edwards v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012) ("[T]he *Graham* factors compel the conclusion that [the police officer] used unreasonable force when he subjected [plaintiff] to five to seven minutes of dog attack, while [plaintiff] was pleading to surrender and [the police officer] was in a position to immediately

---

[6] It is unclear from the record as to whether Officer Homza ordered K-9 Chase to release Fought after he stopped resisting arrest. (6-29-21 -Exhibit H -7-18-2017 Video of Arrest; Doc. 105-5, at 18, 43 Doc. 106, ¶ 44). When Officer Homza was asked why he didn't command K-9 Chase to release Fought, he responded: "I did, once Mr. Fought removed his hand from underneath his body and backup officers arrived and I was able to safely place Plaintiff Fought in custody." (Doc. 105-5, at 43).

effect [the plaintiff's] arrest."); *see also e.g., LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) ("in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of [police dogs] or a refusal without cause to alleviate its harmful effects constitutes excessive force"); *see also e.g., Campbell v. City of Springboro, Oh*io, 788 F. Supp. 2d 637, 671 (S.D. Ohio 2011) *aff'd*, 700 F.3d 779, 787 (6th Cir. 2012) (denying summary judgment on excessive force claim because "[t]here is evidence suggesting that [officer] allowed [the canine] to continue to bite [suspect] for an extended period of time, up to forty-five seconds"). Officer Homza's motion for summary judgment on this basis is therefore **DENIED**. (Doc. 104); *see Younger v. Gross*, No. 20-878, 2023 WL 2433363, at *8 (W.D. Pa. Mar. 9, 2023) (denying summary judgment because there were questions of material fact surrounding the alleged use of force that prevented a finding of qualified immunity); *see Horninger v. Gupko*, No. 3:10-CV-02559, 2013 WL 226887, at *8 (M.D. Pa. Jan. 18, 2013) (finding defendants were not entitled to qualified immunity where "there still remains questions of material fact surrounding whether Plaintiff's constitutional rights were violated").

### 3. Fought's Negligence, Battery, Intentional Infliction of Emotional Distress, and Assault Claims

In Count III, Count IV, Count V, and Count VIII, Fought asserts claims for assault, battery, intentional infliction of emotional distress, and negligence against Officer Homza. (Doc. 36, ¶¶ 196-99, 200-03, 204-06, 223-27). "A police officer may be held liable for assault and battery when the force used in making an arrest is unnecessary or excessive." *Minor v. Cumberland Twp.*, 258 F. Supp. 3d 518, 531-32 (W.D. Pa. 2017). Here, Fought's negligence and intentional infliction of emotional distress claims are also directly tied to his excessive

force claims. (Doc. 36, at 30, 33). When questions of material fact remain regarding the underlying excessive force claim, questions of material fact likewise exist as to these related claims. *See Boroff v. Lynn*, No. CIV.A. 11-6849 ES, 2014 WL 7148918, at *9 (D.N.J. Dec. 12, 2014), *aff'd*, 643 F. App'x 130 (3d Cir. 2016) ("Because the remaining claims before the Court- negligence and assault and battery- "go hand in hand" with Plaintiff's excessive force claim, [Police Officer] is entitled to summary judgment on them as well."); *see also Minor*, 258 F. Supp. 3d at 531-32 ("As the Court has found that genuine questions of fact and credibility exist as to [the plaintiff's] excessive force claims, similar questions of fact and credibility exist as to her assault and battery claims"). Because the Court finds that Officer Homza is not entitled to summary judgment on Fought's Fourth Amendment excessive force claim, Officer Homza's motion for summary is also **DENIED** as to Fought's negligence, assault, battery, and intentional infliction of emotional distress claims against him. (Doc. 36, ¶¶ 196-99, 200- 03, 223-27 at 30, 33; Doc. 104); *see El v. City of Pittsburgh*, No. CV 15-834, 2018 WL 3707420 (W.D. Pa. Aug. 3, 2018), *aff'd in part, rev'd in part, dismissed in part*, 975 F.3d 327 (3d Cir. 2020) ("For the reasons set forth supra, a reasonable factfinder could conclude that the force used by [Police Officers] with respect to the [Plaintiffs] was excessive. Accordingly, the Defendants' motion for summary judgment as to the Plaintiffs' assault and battery claims against [Police Officers] shall be denied.").

### 4.  Officer Falcone's Negligence Claim

In Count VIII of the second amended complaint, Officer Falcone also alleges a negligence claim against Officer Homza. (Doc. 36, ¶¶ 223-27). Moving for summary judgment, Officer Homza argues that Officer Falcone's negligence claim is barred by the co- employee immunity provision of the Pennsylvania Worker's Compensation Law ("WCA"),

77 P.S. § 72. (Doc. 107, at 41). In opposition, Officer Falcone argues his claim is not barred because Officer Homza's conduct was "knowing, intentional, and foreseeable." (Doc. 112-2, at 16).

Typically, a plaintiff "cannot recover from his co-worker because Pennsylvania law provides that the Workers' Compensation Act is the exclusive remedy for recovering loss due to work related injuries, including injuries caused by the negligence of a co-worker." *Shaw v. State Farm Ins. Co.*, CIV. A. 07-1553, 2008 WL 2756507, at * 1 (W.D. Pa. July 15, 2008), *aff'd*, 331 Fed. Appx. 946 (3d Cir. 2009) (citing 77 Pa. C.S.A. §§ 72, 481(a)). The WCA provides:

> If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on accounts of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, *except for intentional wrong*.

77 P.S. § 72 (emphasis added).

This language considered, an individual co-worker may only be held liable under the WCA only for intentional wrongs. 77 P.S. § 72. Further, the Pennsylvania Superior Court has found that the type of intentional wrongs that give rise to a cause of action under the WCA are those that one would not normally expect to be subjected to while at the workplace. See *Baum v. NGK Metals Corp.*, 155 F. Supp. 2d 376, 380 (E.D. Pa. 2001) ("[a] plaintiff has a cause of action under the WCA, where the intentional wrong is not normally expected to be present in the workplace) (internal quotations and citation omitted).

It is undisputed that Officer Falcone and Officer Homza were working in their official capacities as Wilkes-Barre police officers at the time Officer Falcone was bitten by K-9 Chase. (Doc. 105-5, at 30; Doc. 110-3, at 14). There is nothing in the record suggesting that Officer Homza acted intentionally when K-9 Chase bit Officer Falcone. While Officer Falcone argues

18

that "Defendant Homza's conduct was knowing, intentional, and foreseeable," and therefore constitutes a "intentional tort," the claim at issue is negligence, which is not an intentional tort. (Doc. 112-17, at 16). The Court therefore agrees with Officer Homza's assertion that Officer Falcone cannot recast his negligence claim into an intentional tort through his briefing. (Doc. 115, at 24). Accordingly, Officer Falcone' s negligence claim is barred by the co-worker exclusivity provision of the Workers' Compensation Act as it fails to trigger the "intentional wrong" exception as a matter of law. [7] (Doc. 115, at 25); 77 P.S. § 72; *see Wakshul v. City of Phila.,* 998 F. Supp. 585, 589 (E.D. Pa. 1998). Officer Homza's motion for summary judgment as to Count VIII is therefore **GRANTED**. (Doc. 104). Officer Falcone's negligence claim brought under Count VIII is thus **DISMISSED**. (Doc. 36, ¶¶ 223-27).

B. City defendants' motion for summary judgment

**1. Fought's Failure to Train and Supervise Claim[8]**

City Defendants argue they are entitled to summary judgment on Count II of the second amended complaint, Fought's failure to properly train and supervise claim. (Doc. 111, at 14-15). City Defendants argue that Fought cannot establish that they acted with deliberate indifference in training Officer Homza or that an alleged failure to train him was a direct cause of Fought's injuries. (Doc. 36, ¶¶ 178-95; Doc. 111, at 14-15). In opposition, Fought

---

[7] Because the Court will grant summary judgment on Count VIII, it is likewise appropriate to grant summary judgment on Count IX, Kaitlyn Falcone's loss of consortium claim. *Murray v. Com. Union Ins. Co.,* 782 F.2d 432, 438 (3d Cir. 1986) (citing *Little v. Jarvis,* 219 Pa. Super. 156, 280 A.2d 617, 620 (1971)) (one cannot recover for loss of consortium in absence of defendant's liability to spouse). Plaintiffs do not oppose the dismissal of this claim. (Doc. 112-16, at 10). Count VIII is therefore **DISMISSED**.

[8] Plaintiffs do not oppose the dismissal of their negligence, loss of consortium, and negligent retention claims against City Defendants. (Doc. 112-16, at 10). Accordingly, Counts VIII, XI, and XIV as to City Defendants will be **DISMISSED.**

19

argues that City Defendants are not entitled to summary judgment on his failure to train and failure to supervise claims. (Doc. 112-16, at 7-10).

Fought brings his failure to train and supervise claims under Section 1983. (Doc. 36, ¶¶ 178-95). While municipalities and other local governments are considered "persons" for purposes of Section 1983 liability, they cannot be held responsible for every constitutional tort inflicted by their employees. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Municipalities are responsible only for "their *own* illegal acts" and are not subject to *respondeat superior* liability. *Connick*, 563 U.S. at 62 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). To bring a Section 1983 claim against a municipality, the plaintiff must show that "the alleged constitutional transgression implements or executes a policy, regulation[,] or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cty. of Berk*s, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted). In other words, a plaintiff can establish Section 1983 municipal liability in two ways: policy or custom. *Watson v. Abington Township*, 478 F.3d 144, 155 (3d Cir. 2007). The Third Circuit has explained that to prove liability, the plaintiff must establish that the municipal policy or custom was itself unconstitutional or was the "moving force" behind the constitutional deprivation. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted). Thus, to prevail on a *Monell* claim, a plaintiff must identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered. *See Natale v. Camden Cty. Corr. The facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

a. Failure to Train

A *Monell* claim premised on the alleged failure to train employees requires the plaintiff to show that the alleged training deficiency amounts to "deliberate indifference" to the constitutional rights of individuals who will come into contact with those employees. *Thomas,* 749 F.3d at 222 (quoting *Carter v. City of Philadelphia,* 181 F.3d 339, 357 (3d Cir. 1999)); *see also Reitz v. County of Bucks,* 125 F.3d 139, 145 (3d Cir. 1997) ("[F]ailure to train can serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom [a municipal employee] come[s] into contact."). This demanding standard requires evidence that the municipality "disregarded a known or obvious consequence" of its action. *Connick,* 563 U.S. at 61. The alleged training deficiency must be closely related to the constitutional injury suffered by the plaintiff. *Connick,* 563 U.S. at 61.

Ordinarily, a pattern of constitutional violations will give notice to a municipal actor that new or different training is necessary, and continued adherence to the original training program will demonstrate the "conscious disregard" required to establish deliberate indifference. *Thomas,* 749 F.3d at 223 (citation omitted). Allegations focused on one particular officer's training "will not alone suffice to fasten liability on the city, for the officer's [alleged] shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris,* 489 U.S. 378, 390-91, (1989). This considered, there are certain situations where the need for training is "so obvious" that, even without a pattern of previous constitutional violations, failing to provide such training could rise to the level of deliberate indifference. *Thomas,* 749 F.3d at 223 (quoting *City of Canton,* 489 U.S. at 390 n.10). Such "single-incident" failure-to-train liability turns on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle the situation will violate

21

citizens' rights." *Thomas*, 749 F.3d at 223 (alteration in original) (quoting *Bd. of Cty. Comm'rs. v. Brown*, 520 U.S. 397, 409 (1997)). Here, Fought does not allege a pattern of constitutional violations by City Defendants. (Doc. 36, ¶¶ 178-95). Thus, the Court construes Fought's *Monell* claim as a single incident failure-to-train liability.[9] (Doc. 36, ¶¶ 178-95).

The record reflects that Officer Homza received eight weeks of extensive K-9 training and around sixteen hours of in-service training monthly. (Doc. 112-5; Doc. 112-16, at 35); *see Williams v. Ponik*, 822 F. App'x 108, 113 (3d Cir. 2020) (looking to evidence of training when determining whether the record reflects a defendant-city acted with deliberate indifference by failing to train officers). Meanwhile, Fought has failed to present evidence regarding the deliberate indifference of any Wilkes Barre decision makers. *See Cannarozzo v. Borough of W. Hazleton*, 575 F. Supp. 3d 510, 530-32 (M.D. Pa. 2021) (granting summary judgment on city-defendant's failure to train claim where plaintiff failed to produce evidence of deliberate indifference), *aff'd sub nom. Cannarozzo v. Borough of W. Hazelton*, No. 22-1079, 2022 WL 17261785 (3d Cir. Nov. 29, 2022). In fact, in his brief in opposition to City Defendants' motion, Fought fails to cite to the record at all on this claim, with the exception of citations to deposition testimony contained Exhibit A, which Plaintiffs failed to attach to their motion and therefore is not on the docket or in the record.[10] (Doc. 112-16, at 8-9). Regardless, the

---

[9] On June 12, 2020, the Honorable Judge Mariani dismissed without prejudice two counts of Plaintiffs' second amended complaint, Count IX and XII, Custom and Policy under Section 1983 against the Wilkes Barre, Officer Homza and Chief Lendacky, and Negligent Hiring against Wilkes Barre and Chief Lendacky. (Doc. 61).

[10] Although Plaintiffs have listed "Exhibit A: Deposition Transcript for Marcela Lendacky dated December 8, 2020" in their "Appendix to Plaintiff's Response Concise Statement," it does not appear as though Plaintiffs have attached this exhibit to this appendix. (Doc. 112-4, at 1; Doc. 112-1, - Doc. 112-18). However, the Court takes notice of the

proposition that this deposition testimony apparently stands for, that Chief Lendacky believed there needed to be additional K-9 training, does not amount to the deliberate indifference needed to satisfy Fought's claim. There is no indication that this testimony, or any other evidence in the record, would reveal a "conscious" or "deliberate" disregard for the consequences of the municipality's choice. *City of Canton*, 489 U.S. at 390. "The scant testimony cited is not evidence that the risk of a Fourth Amendment violation was a 'highly predictable consequence' of [Wilkes Barre's] failure to provide training." *Cannarozzo*, 575 F. Supp. 3d at 532.

Furthermore, the Fought has failed to introduce any evidence of what type of training would have made a difference in this case or expert testimony attributing Fought's injuries to lack of training. *Cf. Evans v. Columbia Cnty.*, No. 1:20-CV-00722, 2024 WL 115202, at *39 (M.D. Pa. Jan. 10, 2024), *dismissed*, No. 24-1227, 2024 WL 3676934 (3d Cir. Apr. 16, 2024) (looking at expert testimony and specific training deficiencies when finding there existed questions of material fact as to whether defendant-municipal failed to adequately train staff). Considering the lack of record evidence related to this claim, the Court finds that no reasonable juror could conclude Fought has met his burden as to his failure to train claim. Accordingly, summary judgment is **GRANTED** in City Defendants' favor as to this claim. [11] (Doc. 108). Fought's failure to train claim is hereby **DISMISSED**. (Doc. 36, ¶¶ 178-95).

---

deposition of Defendant Lendacky dated October 8, 2020, in City Defendants' appendix of exhibits (Doc. 110-4).

[11] In Plaintiffs' brief in opposition, Fought also argues that City Defendants' failures are closely related to Officer Falcone's injuries. (Doc. 112-16, at 8). However, in Plaintiffs' second amended complaint, only Fought asserts a failure to train and super claim against City Defendants. (Doc. 36, at 24).

   b. Failure to Supervise

Section 1983 claims based upon a theory of respondeat superior are barred under

*Monell. Dotterer v. Pinto*, No. CV 13-06903, 2016 WL 336870, at *9 (E.D. Pa. Jan. 27, 2016).

To establish a claim for failure to supervise under Section 1983, Fought must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)*; see also Dotter* 2016 WL

336870, at *9; *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

In asserting a failure to supervise claim, Fought must "identify specific acts or omissions of

the supervisor that evidence deliberate indifference and persuade the court that there is a

relationship between the identified deficiency and the ultimate injury." *Sample*, 885 F.2d at

118.

   According to City Defendants, Fought has not presented any evidence to establish the

above-listed elements. (Doc. 111, at 16). Fought responds that the record reflects City

Defendants failed to discipline Officer Homza or take any corrective measures following his

missed K-9 training. (Doc. 112-16, at 9-10). In support of this response, Fought cites both the

declaration of Andre Jimenez in which she states that "regular training (weekly and monthly)

is necessary to identify any issues that may need to be addressed," as well as the missing

deposition testimony of Chief Lendacky. (Doc. 112-16, at 9-10). Even considering this

evidence, the Court finds Fought's claims to be unsupported. In *Sample v. Diecks*, the Third

Circuit emphasized that "it is not enough for a plaintiff to argue that the constitutionally

24

cognizable injury would not have occurred if the superior had done more than he or she did." 885 F.2d 1099, 1118 (3d Cir. 1989). "Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury." *Brown*, F.3d at 216 (internal citations and quotations omitted). Here, Fought has failed to do so. Aside from deposition testimony that Chief Lendacky "knew that proper training of the canine team and the officers they would be working with was critical to ensure that the officers could safely perform their job," Fought has failed to identify specific omissions or deliberate indifference on her part. In fact, the deposition testimony of Chief Lendacky provides the opposite, supporting that she asked that proper policies be used to train officers because it "felt important for them to safely do their job." (Doc. 110-4, at 17). As Fought has failed to produce any evidence otherwise, no reasonable fact finder could conclude Chief Lendacky acted with deliberate indifference while conducting her supervisory duties. Accordingly, summary judgment is **GRANTED** as to Fought's failure to supervise claims. (Doc. 36, ¶¶ 178-95; Doc. 108). Count II of the second amended complaint is thus **DISMISSED**. (Doc. 36, ¶¶ 178-95).

### 2. Plaintiffs' State-Created Danger Claims

Plaintiffs assert a state-created danger claim against Chief Lendacky in Count X of their second amended complaint. (Doc. 36, ¶¶ 232-38). The gist of this claim is that Chief Lendacky failed to take preventative measures to protect Plaintiffs from the danger presented by Officer Homza. (Doc. 36, ¶ 237). The parties dispute whether Plaintiffs have met their burden as to their state-created danger claims. (Doc. 111, at 19; Doc. 112-16, at 10-13). The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." "Generally, the Due

Process Clause does not impose an affirmative duty on the state to protect its citizens from harms caused by other private citizens or themselves." *LEONARD HROMEK, KIMBERLY HROMEK, & MICHAELLA PACK, Administrators of the Est. of Nicholas P. Hromek; Plaintiffs v. BOROUGH OF EXETER & CHIEF SCHLAGEL, Exeter Borough Police Dep't, Defendants*, No. 3:23CV549, 2024 WL 4217031, at *3 (M.D. Pa. Sept. 17, 2024). However, when it is the state who places a person in a danger it created, the state has a duty to protect against that danger. *Mears v. Connolly*, 24 F.4th 880, 883 (3d Cir. 2022) ("when it affirmatively places a person in a position of danger that the person would not otherwise have faced .... Then, the government must protect people from the dangers it created."). Under a theory of "state-created danger," a plaintiff may sue under Section 1983 to recover from state actors who "affirmatively acted to create plaintiffs danger, or to render him or her more vulnerable to it." *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir. 1992). To establish a state-created danger claim, a plaintiff must show:

> (1) The harm ultimately caused was foreseeable and fairly direct (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

> *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017) (quoting *Bright*, 443 F.3d at 281 (brackets omitted).

"Liability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *Middle Bucks Area Vo. Tech. School*, 972 F.2d at 1374; *see also Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d Cir.

2006). To succeed on a state-created danger claim, all four elements be satisfied. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

Under the fourth element of the state-created danger test, the Third Circuit has found that liability "is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger. It is a misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright,* 443 F.3d at 282 (internal citations and quotation omitted). As such, in order to establish the fourth element of a state-created danger claim, the plaintiffs must identify "an affirmative action, rather than inaction or omission." *Phillips,* 515 F.3d 224, 236 (3d Cir.2008) (citations omitted). While "the line between action and inaction is not always easily drawn," *Morrow v. Balaski,* 719 F.3d 160, at 178 (3d Cir.2013), *as amended* (June 14, 2013) the Third Circuit has "never found state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." *Bright,* 443 F.3d at 282. The requirement of an affirmative act serves to distinguish cases where officials might have done more from cases where officials created or increased the risk itself. *Morrow,* 719 F.3d at 179 (alterations and citation omitted).

City Defendants argue that Plaintiffs have failed to introduce evidence in support of any of the four necessary elements to prevail on this claim.[12] (Doc. 111, at 20). In opposition,

---

[12] Chief Lendacky also relies on *Pahler v. City of Wilkes-Barre*, 207 F. Supp. 2d 341, 351 (M.D. Pa. 2001), *aff'd,* 31 F. App'x 69 (3d Cir. 2002) to argue Officer Falcone's state-created danger claim is precluded. (Doc. 111, at 21). The *Pahler* court found that "the 'state-created danger' theory, arising out of the substantive due process clause of the Fourteenth Amendment, is inapplicable to law enforcement personnel who are injured during their employment." 207 F. Supp. 2d at 351 (M.D. Pa. 2001).

Plaintiffs contend that summary judgment would be inappropriate as to their state-created danger claims because Chief Lendacky was aware of the dangers caused by her failure to enforce proper training and thus, as a result, Plaintiffs were foreseeably injured. (Doc. 112-16, at 10-13). However, Plaintiffs again fail to cite to the record in their brief as it related to their state-created danger claim. (Doc. 112-16, at 10-13).

The record reflects that the Wilkes-Barre City Police Department canine unit was reactivated when Chief Lendacky was the Chief of Wilkes-Barre City Police Department, that she participated in the review and selection of the officers who were assigned to the canine unit, including Officer Homza, and that she knew that the training of the officers who were not canine handlers was necessary to ensure that the officers could safely perform their duties. (Doc. 110-4, at 8-9; 10, 15; Doc. 112-3, ¶¶ 3-7). However, the record fails to support any of the elements necessary to establish a state-created danger claim. *Bright,* 443 F.3d at 282. Plaintiffs refute this conclusion by arguing that Chief Lendacky selected Officer Homza to be a canine handler despite failing to meet the training requirements under Special Order 1.3.9 and continued to allow Officer Homza to serve as a canine handler despite his failures to attend canine training. (Doc. 112-16, at 11). As Plaintiffs see it, their injuries were foreseeable and a direct consequence of Officer Homza's appointment and lack of training, which Chief Lendacky effectuated with conscious disregard for the serious risk posed. (Doc. 112-16, at 11-12). However, this arguments fails not only for lack of record support, but also because courts have concluded that failure to train and supervise officers are distinct claims. *See Nawuoh v. Venice Ashby Cmty. Ctr.,* 802 F. Supp. 2d 633, 642 (E.D. Pa. 2011) (finding failure to train is not an affirmative act that satisfies the fourth element); *see also Estate of Pendelton ex rel. Pendelton v. Davis,* 2007 WL 1300743, at *11 (M.D. Pa. May 3, 2007) (finding failures of

supervision or training do not meet the affirmative act requirement of the state-created danger test). Also, the record is devoid of evidence that Chief Lendacky's behavior was "conscious shocking." *See L. H. v. Pittston Area Sch. Dist.*, 666 F. App'x 213 (3d Cir. 2016) (upholding the district court's dismissal of state-created danger claim where the behavior at issue was not "conscious shocking"). Accordingly, no reasonable fact finder could conclude Plaintiffs have met their burden as it relates to their state create danger claims. City Defendants' motion for summary judgment is **GRANTED** as it relates to Plaintiffs' state-created danger claims. (Doc. 36, ¶¶ 232-38; Doc. 108). Count X of the second amended complaint is to be **DISMISSED**. (Doc. 36, ¶¶ 232-38).

### 3. Officer Falcone's Negligent Hiring Claim

In Count XII and Count XIII of the second amended complaint, Fought and Officer Falcone each allege a negligent hiring claim against Wilkes Barre and Chief Lendacky. (Doc. 36, ¶¶ 255-64, 265-74). Fought's negligent hiring claim has previously been dismissed by this Court. (Doc. 36, ¶¶ 255-64; Doc. 61). An employer may be held responsible for the intentional acts of employees where a reasonable investigation into an employee's background would have revealed prior criminal or violent propensities related to the employee's position. *Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 572, 246 A.2d 418, 423 (1968). To sustain a claim for negligent hiring under Pennsylvania law, a plaintiff must allege the elements of common law negligence, duty, breach, causation, and damages, as well as that employer was on notice of the employee's propensity for violence and such employment might create a situation where violence would harm a third person. *Miller v. Schmid*, No. 22-CV-00958, 2024 WL 922757, at *7 (M.D. Pa. Mar. 4, 2024) (*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 488 (3d Cir. 2013) (citing *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 420 (Pa. 1968)); *Heller v. Patwil*

*Homes, Inc.*, 713 A.2d 105, 107-08 (Pa. Super. Ct. 1998)). The notice requirement relates to the usual elements of negligence in two ways, demanding proof that but for the defendant's breach of the duty of reasonable care, the defendant would have known about the employee's dangerousness, and the failure to know and act on the dangerousness of the employee caused the plaintiff's injury. *Belmont*, 708 F.3d at 488 (citing *Dempsey*, 246 A.2d at 420 (Pa. 1968)); *Heller*, 713 A.2d at 107-08.

City Defendants argue Officer Falcone's negligent hiring must fail because "nothing on the record indicates Officer Homza was violent, or had a propensity to violence, nor that his employment could cause harm . . ." (Doc. 111, at 23). Officer Falcone avers otherwise, submitting testimony from Detective Ronald Foy, who investigated the incident in which Officer Falcone was injured. (Doc. 112-16, at 13-14; Doc. 112-7). Therein, Detective Foy testified that during an arrest at the Wilkes Barre Motor Lodge, Officer Homza "repeatedly kicked a man who was handcuffed and in control of other officers during the course of an arrest." (Doc. 112-16, at 13-14; Doc. 112-7, at 15). As Officer Falcone sees it this "propensity for violence should have prompted a thorough investigation by Lendacky into the circumstances of [Officer Homza's violent arrest]. Instead, Lendacky stuck her head in the sand and failed to investigate any instances of alleged misconduct prior to appointing Officer Homza as a canine officer, let alone investigating a sustained allegation of excessive for against a handcuffed person in custody of her police officers." (Doc. 112-16, at 14). In their reply brief, City Defendants dispute this characterization of events, asserting "Plaintiffs completely missed the mark on this argument, because Chase accompanied Officer Homza to the arrest which occurred at the Wilkes-Barre Lodge, so this incident obviously occurred after Officer Homza became an active canine officer." (Doc. 117, at 12; Doc. 112-7, at 49-50,

59). Furthermore, that the in the deposition testimony cited by Plaintiffs, Detective Foy provides that "Officer Homza used poor judgment when *he did not release the canine* during the arrest at the Wilkes-Barre Lodge." (Doc. 117, at 12; Doc. 112-7).

Detective Foy's testimony does create some dispute as to whether or Officer Homza had a demonstrable propensity towards violence. (Doc. 112-7, at 15). However, Officer Falcone has failed to point to any record evidence that Chief Lendacky was on notice of this behavior when she hired Officer Homza, especially given the violent incident cited by Plaintiffs occurred after Officer Homza was already on the force and working with the canine unit. (Doc. 112-7). While Officer Falcone boldly asserts that Chief "Lendacky stuck her head in the sand and failed to investigate any instances of alleged misconduct prior to appointing Officer Homza as a canine officer," he cites to no evidence in support of this proposition. (Doc. 112-16, at 14). Accordingly, no reasonable fact finder could conclude that Officer Falcone has met his burden as to his negligent hiring claim against City Defendants. For that reason, City Defendant's motion for summary judgment is **GRANTED** as to Officer Falcone's negligent hiring claim. (Doc. 36, ¶¶ 255-64, 265-74; Doc. 108). Count XIII of the second amended complaint is **DISMISSED**.[13] (Doc. 36, ¶¶ 265-74); *see Wilson v. Borough of Bellmawr*, No. CV 13-5437, 2016 WL 7377114, at *15 (D.N.J. Dec. 20, 2016) (granting summary judgment on a negligent hiring claim for lack of evidence).

---

[13] Chief Lendacky asserts that she is entitled to qualified immunity because there is no evidence on the record demonstrating that she violated a constitutional right. (Doc. 111, at 24-25). As the Court finds that Chief Lendacky is entitled to summary judgment on Plaintiffs' claims, the Court declines to address Chief Lendacky's argument concerning qualified immunity.

## IV.    CONCLUSION

Based on the foregoing, Officer Homza's motion for summary judgment is **DENIED in part** and **GRANTED in part**. (Doc. 104). Officer Homza's motion is **DENIED** as to Fought's Fourth Amendment, battery, assault, intentional infliction of emotional distress, and negligence claims and on the basis of qualified immunity. (Doc. 104). Officer Homza's motion is **GRANTED** as to Officer Falcone's negligence claim and Kaitlyn Falcone's loss of consortium claims. (Doc. 104). City Defendants' motion for summary judgment is **GRANTED**. (Doc. 108). Fought's failure to train and supervise claim asserted in Count II; Fought's abuse of process claim asserted against Officer Homza in Count VI; Fought's malicious prosecution claim asserted against Officer Homza in Count VII; Plaintiffs negligence claim asserted in Count VIII against City Defendants; Officer Falcone's negligence claim against Officer Homza in Count VIII; Kaitlyn Falcone's loss of consortium claim asserted in Count IX; Plaintiffs' state-created danger claims asserted in Count X; and Officer Falcone's negligent hiring claims and negligent retention claims both asserted in two counts each titled Count XIII are hereby **DISMISSED**. (Doc. 36; Doc. 104; Doc. 108).

An appropriate Order follows.

Dated: September 27, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**